J-S06033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: ELIZABETH N. MCGUSTY, AN ALLEGED INCAPACITATED PERSON<br><br>APPEAL OF: ELIZABETH N. MCGUSTY | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br>No. 2699 EDA 2016 |

Appeal from the Order Entered July 20, 2016
in the Court of Common Pleas of Chester County Orphans' Court
at No(s): 1516-0113

BEFORE: MOULTON, RANSOM, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 01, 2017**

Appellant, Elizabeth N. McGusty, appeals from the order entered in the Chester County Court of Common Pleas appointing Appellant's adult sons, Appellee, James C. McGusty, Jr., and Edwin A. McGusty plenary guardians of Appellant's person and Appellee as the sole plenary guardian of Appellant's estate. Appellant contends that the trial court erred by failing to properly consider her testimony regarding her sons. We affirm.

We adopt the facts and procedural history set forth by the trial court's opinion. *See* Trial Ct. Op., 10/10/16, at 1-3. In this timely appeal, Appellant raises the following issue for review: "Did the trial court commit an abuse of discretion when it failed to properly account for or consider the testimony of Appellant as it related to the appointment of her adult sons as

_____

[*] Former Justice specially assigned to the Superior Court.

plenary guardians of her person, and [Appellee] as guardian over the estate?" Appellant's Brief at 9.

Appellant argues that the trial court failed to properly consider her testimony regarding her "distrust of and objection to the appointment of her sons as co-guardians of her person and Appellant as plenary guardian of her estate." *Id.* at 13. To this end, Appellant specifically points to her testimony regarding her sons purported lack of interest in caring for her daily needs. *Id.* at 18. She also cites her previous refusal to grant her sons a durable power of attorney as evidence of her continual distrust. We conclude no relief is due.

Our standard of review is well settled:

> The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and adequate evidence. However, we are not limited when we review the legal conclusions that the Orphans' Court has derived from those facts.

*In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa. Super. 2004) (quoting *In re Estate of Schultheis*, 747 A.2d 918, 922 (Pa. Super. 2000)).

The appointment of a guardian lies within the sound discretion of the trial court. ***Estate of Haertsch***, 649 A.2d 719, 720 (Pa. Super. 1994). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***In re Duran***, 769 A.2d 497, 506 (Pa. Super. 2001) (quoting ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1123 (Pa. 2000)).

The Pennsylvania Decedents, Estates and Fiduciaries Code provides:

> **(f) Who may be appointed guardian.--**The court may appoint as guardian any qualified individual, a corporate fiduciary, a nonprofit corporation, a guardianship support agency under Subchapter F (relating to guardianship support) or a county agency. . . . **If appropriate**, the court shall give preference to a nominee of the incapacitated person.

20 Pa.C.S. § 5511(f) (emphasis added).

If a guardianship nominee is also named in a durable power of attorney for an incapacitated person, that individual should receive particular consideration. ***In re Sylvester***, 598 A.2d 76, 83-84 (Pa. Super. 1991).

In the case *sub judice*, we note that Appellant had not executed a durable power of attorney in favor of anyone. Accordingly, the trial court did not err by failing to consider that Appellee was not previously named as Appellant's agent. ***See id***. Further, the trial court specifically noted its consideration of Appellant's testimony:

> As the record of the proceedings reflects, the court has taken great care to consider the needs and desires of [Appellant]. By way of example, the court took care to: appoint counsel for [Appellant], allow [Appellant] additional time to obtain an "independent" evaluation of her capacity, and receive into evidence the direct testimony of [Appellant] at both of the proceedings. As the court told [Appellant] directly at the close of the second hearing, although it was required under the law to rule as it did, "I do understand you. I understand what you are saying and I respect your views."

Trial Ct. Op. at 5.

We conclude that the trial court aptly considered the evidence presented, including Appellant's testimony. *See In re Estate of Cherwinski*, 856 A.2d at 167. Therefore, we hold that the trial court did not abuse its discretion by naming Appellee and Edwin A. McGusty as the plenary co-guardians of Appellant's person and Appellee as the sole plenary guardian of Appellant's estate. *See Estate of Haertsch*, 649 A.2d at 720; *In re Duran*, 769 A.2d at 506. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2017

- 4 -

C

THE COURT OF COMMON PLEAS, CHESTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE MATTER OF:                          :
ELIZABETH N. MCGUSTY                        : No. 1516-0113
                                           :
AN ALLEGED INCAPACITATED PERSON            :

*Nancy Pine, Esquire, Attorney for Petitioner*
*Douglas W. Olshin, Esquire, Attorney for Elizabeth McGusty*

## OPINION
### Pursuant to Pa. R.A.P. 1925(a)

Appellant, Elizabeth McGusty, alleges the court committed five (5) errors when in it's order dated and entered July 20, 2016 it adjudicated her to be an incapacitated person and appointed her sons, James C. McGusty, Jr. and Edwin A. McGusty, as plenary co-guardians guardians of her person and her son, James C. McGusty, Jr., as plenary guardian of her estate. The court will address each of the alleged errors below.

### Case History

Ms. McGusty is eighty-three (83) years old. Since approximately November, 2015, Ms. McGusty has resided at Sunrise of Westtown, an assisted living facility in Chester County, Pennsylvania. This matter came before the court on the petition of one of Ms. McGusty's sons, James C. McGusty, Jr., who sought to become guardian of the person and estate for Ms. McGusty. His brother, Edwin McGusty, consented to James' appointment as guardian of the person and estate.

1

On March 22, 2016, the court held a hearing on the petition to appoint a guardian. At that time, Ms. McGusty was represented by counsel, Susan Potts, Esq.. The court was advised at the hearing that Ms. McGusty wished to have an independent evaluation of her competency completed by a person of her choosing. The court agreed to allow Ms. McGusty time to do so. It, however, proceeded that day to take testimony from the parties and witnesses present, including Ms. McGusty. Upon the conclusion of the hearing and after consideration of the evidence, the court entered an order appointing James McGusty as the temporary guardian of the estate and the person of his mother. The court's order specifically provided Mr. McGusty with the power to "pay for the cost of the independent evaluation requested by Ms. McGusty."

A review hearing eventually was set for July 20, 2016. At that time, the court again took testimony from James McGusty and Ms. McGusty. At the conclusion of the review hearing, the court appointed both sons, James and Edwin, as co-guardians of the person. Edwin McGusty had requested to take a more active role in the care of his mother following the first proceedings. James McGusty was appointed sole guardian of the estate.

### Error 1-3

Ms. McGusty's first three (3) errors center upon what Ms. McGusty believes was the court's failure to consider the "pecuniary interest" of her sons in having her adjudicated incapacitated. According to Ms. McGusty, their "pecuniary interest" influenced the opinions of the doctor's that testified and upon whom the court relied when reaching its decision.

2

Over the course of two (2) hearings, the court had the opportunity to hear testimony from both of the proposed guardians, Ms. McGusty's sons, as well as the testimony of Ms. McGusty herself. The court carefully considered and evaluated all such testimony and evidence. It was clear to the court then, as it is now, that Ms. McGusty takes issue with her sons' challenging her capacity. The court also is well aware of the value of Ms. McGusty's estate. Nonetheless, after thirty four (34) years of practicing in the orphans' court and four (4) years serving as an orphans' court judge, the court determined that Ms. McGusty's sons were appropriate persons to be appointed as her guardians.

Likewise, the court had the benefit of two medical evaluations conducted of Ms. McGusty in order to assess her capacity, one of which was conducted by a doctor of her choosing at her request. Both doctors concluded that Ms. McGusty was in need of a guardian of the person and estate.

Section 5518 of the same statute provides:

> To establish incapacity, the petitioner must present testimony, in person or by deposition from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by petitioner . . .

The court first received the doctor's deposition and report of Dr. Kenneth Carroll. (Ex. P-1.) Dr. Carroll holds a Ph.D. in Clinical Psychology from the University of South Carolina. His full credentials are detailed in his curriculum vitae, which the court received into evidence at the hearing and was attached to the Petition at Exhibit B. Dr. Carroll conducted an evaluation of Ms. McGusty that lasted approximately ninety (90) minutes. Following his evaluation, Dr. Carroll concluded that Ms. McGusty suffers from dementia

3

which limits her ability to manage her health and safety as well as her financial resources. Although part of Dr. Carroll's "History" included the substance of conversations he had with James McGusty, Dr. Carroll's report details the results of the evaluation he personally made of Ms. McGusty. Dr. Carroll conducted his own interview of Ms. McGusty and posed his own questions to her. Furthermore, although he recommended that a guardian be appointed for her, Dr. Carroll took no position as to whom the court should appoint for that role.

At Ms. McGusty's request, the court also received into evidence the report of Bruce E. Mapes, Ph.D. Dr. Mapes received his Ph.D. from the University of Pennsylvania in 1974. Dr. Mapes, like Dr. Carroll, is a practitioner with years of experience and both are well known to all members of the bench in this County. He, like Dr. Carroll, concluded that Ms. McGusty was incapacitated within the meaning of the statute and required plenary guardians for her person and her estate. Unlike Dr. Carroll, Dr. Mapes did not communicate with her son concerning her mental state. Thus, his conclusions cannot be said to have been influenced by any "pecuniary interest" on her son's part. Dr. Mapes in his report noted as follows:

> Mrs. McGusty was emphatic in prohibiting me from reviewing the previous evaluation or communicating with her son concerning specific observations of her daily functioning. Nor could she provide me with the name of any third party who could provide credible information. Consequently, my evaluation is limited to what I was actually able to observe and assess . . .

(Ex. P-3, at 1.)

The court sees no error in the conclusions it reached.

4

### Error No. 4

Ms. McGusty also alleges that the court "failed to properly credit and consider her testimony when making its decision." The court disagrees.

As the record of the proceedings reflects, the court has taken great care to consider the needs and desires of Ms. McGusty. By way of example, the court took care to: appoint counsel for Ms. McGusty, allow Ms. McGusty additional time to obtain an "independent" evaluation of her capacity, and receive into evidence the direct testimony of Ms. McGusty at both of the proceedings. As the court told Ms. McGusty directly at the close of the second hearing, although it was required under the law to rule as it did, "I do understand you. I understand what you are saying and I respect your views." (N.T. 7/20/16, at 25-26.)

### Error No. 5

In her final error, Ms. MsGusty alleges that she was "unduly prejudiced due to her inability to actively participate in her defense due to inadequate hearing devices provided by the court." The record reflects otherwise.

During the first hearing in this matter, the court began the proceedings by asking Ms. McGusty if she could hear the court. She responded, "[n]ot too well" at which time the court provided Ms. McGusty with earphones to assist her in hearing the proceedings. Thereafter, when asked by the court if she could hear, she responded "Yes." (N.T. 3/22/16, at 3.) Ms. McGusty later testified during the proceedings and was able to hear and answer the questions asked of her counsel. (N.T. 3/22/16, at 27-31.) During one such exchange when asked by her counsel if heard her son's testimony that he was willing to look at other living facilities, Ms. McGusty responded "[w]ell, I heard it. I hope it comes true."

5

Ms. McGusty also was present at the second hearing. At the beginning on the hearing, Ms. McGusty stated that her "hearing aid was not working well." (N.T. 7/20/16, at 7.) She declined the court's offer to use headphones. The court instructed Ms. McGusty to advise the court "if you can't hear any of us" and she answered "yes." (*Id.*) Although at one point Ms. McGusty stated that she could not hear the answer to a question she posed to her son during his testimony, the answer was repeated for Ms. McGusty. (*Id.* at 10-11.) Ms. McGusty did not otherwise notify the court of any difficulty in hearing the proceedings and the court had no indication that such was the case. To the contrary, through the remainder of the proceedings Ms. McGusty provided testimony to the court and answered without difficulty all of the questions posed by the court and her counsel and interposing questions of her own. There is no indication in the record that Ms. McGusty, who was represented by competent counsel at both proceedings, was in any way prejudiced by a limitation on her ability to hear.

BY THE COURT:

Date:  <u>October 10, 2016</u>            _____
                                      Mark L. Tunnell,                J.